UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cause No. 1:20-CR-75-HAB |
| ) | |
| JAQUAN J. BROWN ) | |

**OPINION AND ORDER**

Defendant pleaded guilty to a single count of possession of fentanyl with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). He now objects to probation's assessment of a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon. The Court held an evidentiary hearing (ECF No. 77) and the parties have filed their briefs (ECF Nos. 88, 102, 103).

**I.  Factual Background**

Defendant was caught up in an investigation of another man, Calvin Brantley ("Brantley"). Law enforcement learned of Brantley through a CI. A detective then made five controlled buys of heroin and fentanyl from Brantley in September 2020. Defendant was around for two of those buys: on one instance he let the detective into a residence where the buy occurred, and on a second he was a passenger in a vehicle driven by Brantley to a buy.

Law enforcement obtained search warrants for the residence and the vehicle based on the controlled buys. The search of the residence revealed that both Defendant and Brantley were living at the residence. The kitchen contained ample evidence of drug trafficking, including digital scales, baggies, cutting agents, and several instruments with drug residue.

One bedroom contained an identification card for Defendant as well as clothing in Defendant's size. That bedroom also contained 172 grams of heroin, packaged in smaller amounts,

123.9 grams of fentanyl, 727.2 grams of marijuana, also packaged in smaller amounts, a digital scale, and $530.00 in cash. Some drugs were packaged in paper bindles bearing Brantley's phone number.

In a second bedroom, law enforcement found an identification card for Brantley as well as a phone Brantley had used to coordinate the controlled buys. Drugs were also found in Brantley's room, including 29.6 grams of heroin, packaged in smaller amounts, 60.8 grams of fentanyl, and 330.3 grams of marijuana, packaged in smaller amounts. Nearly $1,200.00 in cash and two handguns were also found in that bedroom.

The search warrant for the vehicle, which was registered to a third person, was executed while Defendant was driving. On questioning by officers, Defendant admitted the presence of both marijuana in the vehicle (23.7 grams) and a handgun in his waistband. Defendant advised that the handgun had slid out from under the driver's seat when he stopped, and he had secured the handgun in his waistband.

A search of the vehicle also revealed three cell phones. On one of the phones was a message, described by the PSR as "related to the trafficking [of] marijuana and fentanyl." (ECF No. 45 at 5). The message reads, "[l]eave me alone about my gun, boy. Hand me 250 and give pops a hundred." A second cell phone contained several photos of Defendant holding firearms, fanning out large amounts of money, and smoking something believed to be marijuana. A message sent to the second cell phone showed a firearm with a message stating, "u still wanting this." Investigators believe that both phones belonged to Defendant.

**II.     Legal Discussion**

Under § 2D1.1(b)(1), a two-level enhancement applies "[i]f a dangerous weapon (including a firearm) was possessed." "[I]n the case of a jointly undertaken criminal activity[,] . . . all

reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" are considered offense conduct attributable to the defendant. § 1B1.3(a)(1)(B).

To apply the firearm enhancement to a defendant who did not personally possess a gun (or have actual knowledge of a coconspirator's[1] gun possession), the judge must make two findings by a preponderance of the evidence: (1) that someone in the conspiracy possessed a firearm in furtherance of the conspiracy, and (2) that the firearm possession was reasonably foreseeable to the defendant. *United States v. Luster*, 480 F.3d 551, 558 (7th Cir. 2007). Defendant does not dispute that Brantley possessed the firearms to further Brantley's drug sales. The only issue is whether Brantley's gun possession was reasonably foreseeable to Defendant.

"[T]he drug industry is by nature dangerous and violent, and a reasonable fact-finder is permitted to use his or her common sense in concluding that in a drug deal involving sizable amounts of money, the presence of firearms is foreseeable." *United States v. Berchiolly*, 67 F.3d 634, 640 (7th Cir. 1995); *see also Luster*, 480 F.3d at 558 (defendant's "frequent presence . . . where the drugs and guns were stored, and his knowledge of [the] large-scale cocaine distribution operation, raise the inference that he could have reasonably foreseen his coconspirator's possession of firearms for intimidation or protection."); *United States v. Banks*, 987 F.2d 463, 467–68 (7th Cir. 1993) ("Since guns are tools of the drug trade, it was reasonably foreseeable that [a coconspirator] would possess one during the offense.").

But the mere fact that Defendant was a member of a drug-distribution ring does not make him strictly liable for all concealed weapons possessed by others involved. Rather, the Court must undertake an individualized inquiry about the foreseeability of the coconspirators' gun possession

---

[1] There is no conspiracy allegation in the indictment here, but case law interpreting similar enhancements has found that an aiding and abetting allegation is enough to hold one defendant responsible for the gun possession of another. *See*, *e.g.*, *United States v. Burnett*, 37 F.4th 1235 (7th Cir. 2022).

from the perspective of Defendant. *United States v. Vold*, 66 F.3d 915, 921 (7th Cir. 1995); *see also Luster*, 480 F.3d at 558 ("[T]he district court must determine that the coconspirator's firearm possession was reasonably foreseeable *to the defendant*.") (emphasis added). And common-sense inferences about foreseeability must have adequate support in the record. *See United States v. Block*, 705 F.3d 755, 764 (7th Cir. 2013) (rejecting the firearm enhancement because the district court "erroneously relied on several irrelevant facts").

The requirement of an individualized inquiry suggests that the scale, scope, and nature of the conspiracy, and Defendant's role in it, should be considered when determining whether gun possession was reasonably foreseeable to him. *Compare Vold*, 66 F.3d at 921 (four-month, two-man conspiracy to cook methcathinone in a trailer and garage not sufficient to make the coconspirator's gun possession reasonably foreseeable), *with Luster*, 480 F.3d at 558 (coconspirator's gun possession reasonably foreseeable when the defendant knew he was part of a large-scale cocaine-distribution enterprise and spent significant time in the music studio where guns were stored).

The Court finds two Seventh Circuit authorities relevant here, one where the appellate court found the enhancement applicable and one where it did not. The first, *United States v. Ramirez*, 783 F.3d 687 (7th Cir. 2015), set out facts where the enhancement applied. The defendant in *Ramirez* was the bookkeeper in a meth ring, made deliveries between locations where drugs were stored, allowed her own home to be used to store drug paraphernalia, and was arrested with more than five pounds of methamphetamine. *Id*. at 691. On these facts, both the district court and the appellate court concluded that the defendant was "alert to the likelihood that guns would be involved." *Id*. at 692.

4

The second is *Vold*. In that case, the defendant was convicted of conspiracy to manufacture methcathinone and was assessed the two-level enhancement under § 2D1.1(b)(1). The enhancement was based on the possession of a handgun by another member of the conspiracy during four "cooks." But there was no evidence that the co-conspirator ever possessed the handgun during the "cooks," and no one had ever seen the handgun during the "cooks." There was also no evidence that the handgun had ever been brandished in the defendant's presence. On these facts, the Seventh Circuit found the enhancement inapplicable. *Id*. at 920–21.

The Seventh Circuit rejected the idea that the connection between drug trafficking and guns alone can support the enhancement.

> The government contends that the risk of manufacturing methcathinone establishes the reasonable foreseeability of a concealed firearm to Vold. We have often recognized that firearms and drug trafficking go hand in hand. We have never held, however, that the mere risk involved in a drug manufacturing conspiracy establishes the reasonable foreseeability of a concealed firearm under Guideline § 2D1.1(b)(1) absent other evidence. The government's position would establish strict liability for possession of a firearm under the Guideline for every drug manufacturing conspirator if any one co-conspirator possessed a concealed firearm during the conspiracy. This result vitiates the government's burden of proof at sentencing as well as the district court's obligation under the Guidelines to conduct an individualized inquiry to ensure that the defendant is sentenced only on the basis of a conspiracy that was reasonably foreseeable to him. The government's position is even more untenable where, as here, the evidence that a co-conspirator possessed a firearm during the conspiracy is extremely weak. We therefore reject it.

*Id*. at 921.

The Court finds this case to be far more like *Vold* than *Ramirez*. Nothing in the record suggests that either Brantley or Defendant ever possessed a firearm during any drug transaction. This is despite five different controlled buys having been conducted by an experienced police detective. There was no suggestion of firearms at all until the search warrants were served. Yes, firearms were found in *Brantley's* room, but other than Defendant also residing at the residence

there is no evidence connecting those firearms to Defendant or suggesting that Defendant was aware of the firearms.

The Court concedes that Defendant was found with a firearm, but his explanation for the firearm is unchallenged, and the amount of drugs in the car during the search were not distribution amounts. The Court also concedes that Defendant featured in photographs featuring suspected drugs and cash but, as Defendant notes, there was nothing illegal about these photos; he is not a felon. In fact, Defendant has no criminal history at all, lessening the inference that Defendant would know the connection between drugs and guns.

Is it possible that Defendant was aware of Brantley's weapons? Of course. But the only *evidence* of that possibility is the existence of the drug trafficking itself. And *Vold* teaches that drugs are not enough. With nothing more, the Court cannot conclude that § 2D1.1(b)(1) applies here.

### III. Conclusion

For these reasons, the Court SUSTAINS Defendant's objection (ECF No. 74) to the PSR. The Court concludes that the two-level enhancement under U.S.S.G. § 2D1.1(b)(1) does not apply here. The Court further concludes that, as a result, Defendant is safety valve eligible under U.S.S.G. § 5C1.2(a). The probation officer is ORDERED to revise the PSR consistent with this Opinion and Order.

SO ORDERED on May 18, 2023.

    s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT